NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| HANOVER INSURANCE *as subrogee and assignee of* NORFOLK SOUTHERN and NORFOLK SOUTHERN RAILWAY COMPANY,<br><br>      Plaintiff,<br><br>v.<br><br>MI-JACK PRODUCTS, INC. *d/b/a Technical Services International*,<br><br>      Defendant,<br><br>MI-JACK PRODUCTS, INC. *d/b/a Technical Services International*,<br><br>      Third-Party Plaintiff,<br><br>v.<br><br>H&M INTERNATIONAL TRANSPORTATION INC., *et al.*,<br><br>      Third-Party Defendants. | Civil Action No.: 17-8299 (JLL)<br><br>**OPINION** |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of a motion by Third Party Defendant H&M International Transportation, Inc. ("H&M") to dismiss the Third-Party Complaint of Third-Party Plaintiff Mi-Jack Products ("Mi-Jack") pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 58). Mi-Jack has submitted opposition, (ECF No. 62), and H&M has submitted a reply thereto, (ECF No. 65). The Court has read the parties' submissions and considers this matter without oral argument in accordance with Federal Rule of Civil Procedure 78. For the reasons set

1

forth below, the Court denies H&M's motion to dismiss.

## I. BACKGROUND[1]

This is a subrogation action arising out of an accident at a railway yard involving a lift truck operator and third-party defendant, Jorge L. Gomez. (TPC ¶ 2). Gomez died when an intermodal container that he was offloading fell onto the lift truck that he was operating, killing Gomez and damaging the lift truck. (TPC ¶ 2). Hoist Liftruck manufactured the lift truck involved in the accident. (TPC ¶ 14). The lift truck was purchased by Norfolk Southern. (Compl. ¶ 11). Mi-Jack, doing business as Technical Services International, and Norfolk Southern entered into an Equipment Maintenance Agreement under which Mi-Jack agreed to perform maintenance, inspection, and repair services on the lift truck. (Compl. ¶¶ 12–17).

At the time of the accident, H&M and Norfolk Southern had entered into an Operating Agreement wherein H&M performed intermodal transportation services at Croxton Railway Yard, the site of the accident. (Compl. ¶¶ 18–19). Pursuant to the Operating Agreement, H&M "agreed to maintain all risk property insurance at replacement costs value on any of Norfolk's[sic] Southern's Intermodal Lift Machines that H&M used." (Compl. ¶ 21). H&M purchased the insurance policy from Hanover Insurance. (Compl. ¶ 23). The lift truck at issue was covered by this insurance policy. (Compl. ¶¶ 22–23).

After the accident, Norfolk Southern filed an insurance claim with Hanover Insurance for the damage to the lift truck. (Compl. ¶ 33). Hanover Insurance paid out $408,100 to Norfolk Southern. (Compl. ¶ 34). Norfolk Southern then assigned Hanover all of its "claims, rights and

---

[1] The facts stated herein are taken as alleged in Mi-Jack's Third-Party Complaint, (ECF No. 7 at 9–21 ("TPC")), and Plaintiff's Complaint, (ECF No. 1 ("Compl.")). For purposes of this motion to dismiss, these allegations are accepted by the Court as true. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) ("The District Court, in deciding a motion [to dismiss under Rule] 12(b)(6), was required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff].").

demands against third-persons" related to the damage to the lift truck. (Compl. ¶ 35). Hanover Insurance filed this subrogation action against Mi-Jack to recover the money it paid out to Norfolk Southern. (*See generally* Compl.). Mi-Jack then filed a Third-Party Complaint against H&M and others asserting claims for contribution and indemnification. (*See generally* TPC). Mi-Jack's claims against H&M assert that if H&M's negligence caused damage to the lift truck, H&M would be contributorily liable for the monetary payments Mi-Jack would have to pay out if it is found liable for damages. (TPC at 13–14). H&M now argues that New Jersey's "anti-subrogation rule" bars Hanover Insurance from asserting a "right of subrogation against its own insured under the subrogating insurer's policy," and thus, Mi-Jack's TPC fails to state a claim against H&M. (ECF No. 58-1 at 5).

## II. **LEGAL STANDARD**

To withstand a motion to dismiss for failure to state a claim, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the Court must take three steps. "First, it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim.' Second, it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, '[w]hen there are well-pleaded

3

factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679) (citations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

### III. ANALYSIS

New Jersey's anti-subrogation rule "prevents an insurer from asserting a right of subrogation against its own insured if the defendant is either the insured, a co-insured, or an additional insured under the subrogating insurer's policy." *Guideone Mut. Ins. Co. v. Comito*, No. L-691-06, 2007 WL 3170127, at *5 (N.J. Super. Ct. App. Div. Oct. 31, 2007) (quoting 22 *Holmes' Appleman on Insurance* § 141.2(B)(2) (2d ed. 2003); *see also Am. Fire and Cas. Co. v. Material Handling Supply, Inc.*, No. 06-1545, 2007 WL 1296200, at *2 (D.N.J. Apr. 27, 2007) ("[S]ince an insurance company cannot subrogate against its own insureds, it would be futile to permit their joinder."). Mi-Jack agrees with the application of New Jersey's anti-subrogation rule as a "general proposition of law," but argues that the rule does not apply here because Norfolk Southern was paid out under the insurance policy rather than H&M. (ECF No. 62 at 11).

It is true that the right of subrogation does not occur "until the insurer has made payment of the insured's claim." *Am. Reliance Ins. Co. v. K Hovnanian at Mahwah IV, Inc.*, 337 N.J. Super. 67, 72 (App. Div. 2001). However, "the courts have consistently held that where an insurance company has paid a loss to one insured under its policy it cannot as subrogee recover the amount so paid from a co-insured under said policy even though the latter's negligence may have caused said loss." *St. Paul Fire & Marine Ins. Co. v. Murray Plumbing & Heating Corp.*, 135 Cal. Rptr.

4

120, 126 (Cal. Ct. App. 1976) (collecting cases). "To allow subrogation under such circumstances would permit an insurer, in effect, to pass the incidence of the loss, either partially or totally, from itself to its own insured and thus avoid the coverage which its insured purchased." *Id.* H&M is thus correct that the anti-subrogation rule would require this Court to dismiss Mi-Jack's TPC. Hanover Insurance would be subject to any affirmative defenses that Mi-Jack would assert against H&M if it were the plaintiff, and the addition of H&M as a third-party defendant would only impact Hanover Insurance's right to recover from Mi-Jack as the contributory negligence of H&M would be asserted against Hanover Insurance. *See USAA Cas. Ins. Co. v. Metro Edison Co.*, No. 12-1178, 2013 WL 2403309, at *2 (M.D. Pa. May 31, 2013).

The question though, is whether H&M, by virtue of its contractual obligation to pay for the insurance policy, is an "insured," "co-insured," or "additional insured" under that policy. As the Court must make all inferences in favor of the non-moving party, it is not able to ascertain that H&M falls into one of those three categories. Hanover Insurance's Complaint mentions the policy by number and states that "Hanover insured the Lift Truck owned by Norfolk Southern through its insurance policy issued to H&M." (Compl. ¶ 23). Mi-Jack's TPC makes no mention of the policy, nor does H&M in its Answer to the TPC, (ECF No. 34). Furthermore, the policy has not been attached to any pleading or motion filed in this case, and as Mi-Jack mentions, Hanover has brought this action solely as the subrogee of Norfolk Southern. Thus, even the though the Complaint alleges that the policy was issued to H&M, that allegation, without more, is not enough for the Court to determine that H&M is an insured under the policy. Accordingly, the Court cannot determine that the application of the anti-subrogation rule to H&M such that Mi-Jack's TPC fails to state a claim would be proper at this juncture.

## IV. CONCLUSION

For the aforementioned reasons, H&M's Motion to Dismiss, (ECF No. 58), is hereby denied. An appropriate Order accompanies this Opinion.

DATED: ~~September~~ OCTOBER 1st, 2018

JOSE L. LINARES
Chief Judge, United States District Court